UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN N. WOODRING,

              Petitioner,

-vs-

ANTHONY BOUCAUD, Superintendent

              Respondent.

**DECISION AND ORDER**
**No. 09-CV-0240T**

_____

**I. Introduction**

*Pro se* petitioner Brian N. Woodring ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 7, 2006, in New York State, County Court, Allegany County, convicting him, after a bifurcated jury trial, of Promoting a Sexual Performance by a Child (N.Y. Penal Law ("Penal Law") § 263.15) and Endangering the Welfare of a Child (Penal Law § 260.10[1]); and Burglary in the Third Degree (Penal Law § 140.20), Criminal Possession of Stolen Property in the Fourth Degree (Penal Law § 165.45[1]), and Petit Larceny (Penal Law § 155.25).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II. Factual Background and Procedural History**

    **A. Introduction**

Sometime in September 2004, Petitioner, who was then 19-years-old, made a video of himself holding down his 12-year-old brother, D.W.,[1] and slapping D.W.'s mouth with Petitioner's penis. Petitioner showed this video to his friend, Jeremy Forester ("Forester"), who then told the police. The police asked Forester to obtain a copy of the video, if he could. Forester asked Petitioner for a copy of the video and Petitioner "instant messaged" the video to Forester over the internet.

Sometime in May 2003, Petitioner left open a window to the Canaseraga Public Library, where he was performing community service. After hours, he then entered the library and stole two laptop computers. Based on information provided by Forester and Petitioner's ex-girlfriend, the Allegany police executed a search warrant at Petitioner's home on October 12, 2004, and recovered the laptop computers.

On July 5, 2005, an Allegany County grand jury returned Indictment No. 05-055, charging Petitioner with one count each of Promoting a Sexual Performance of a Child (Penal Law § 263.15), Endangering the Welfare of a Child (Penal Law § 260.10[1]), Burglary in the Second Degree (Penal Law § 140.25[2]), Grand Larceny in the Fourth Degree (Penal Law § 155.30[1]), and Criminal

---

[1]     The minor victim's name is withheld from this Decision and Order.

Possession of Stolen Property in the Fourth Degree (Penal Law § 165.45 [1]).

**B.    The Motion to Suppress Physical Evidence**

Petitioner moved to suppress the evidence recovered pursuant to the search of his home in Burns, New York, on the grounds that the warrant was issued without probable cause.  By Decision and Order dated November 30, 2005, the county court denied Petitioner's motion to suppress.  See Resp't Exs. A-B.

**C.    The First Trial**

The county court bifurcated the charges for trial purposes, and, on March 14, 2006, the matter proceeded to trial on the first two counts (Promoting a Sexual Performance of a Child and Endangering the Welfare of a Child).

**1.    The People's Case**

Forester was a friend of Petitioner's, and was at Petitioner's house in Canaseraga, New York in the summer of 2004 when Petitioner showed Forester a video "depicting himself and his younger brother."  Trial Trans. [T.T.] of 03/15/06 33-34, 36.  This video showed Petitioner holding down his brother, D.W., who was 12-years-old at the time, and slapping D.W.'s mouth with Petitioner's penis. Id. at 40, 56, 73-74.

In late September, Forester told his high school's resource officer, Officer Robin Humphrey ("Officer Humphrey"), about the videotape, and told Forester to get a copy of the video.  Id. at

37, 44, 51.  Forester contacted Petitioner, via online "instant messaging service," and asked Petitioner to send him the video. Id. at 34-35.  When Forester received the video on September 22 or 23, 2004, he downloaded in from America Online ("AOL") onto a CD. Forester then gave the CD to Officer Humphrey the next day, who turned it over to New York State police.  Id. at 35, 37, 39-40, 49, 54-55.  Investigator William Jones viewed the video and then interviewed D.W.  Id. at 54-56.  D.W. told Investigator Jones that Petitioner "intimidated" him into participating in videos that Petitioner would make.  Id. at 65-66.

At trial, D.W. testified that Petitioner had videotaped him alone, in front of a blue screen, and then had later superimposed the video of Petitioner slapping D.W. on the mouth with Petitioner's penis.  D.W. also denied that the video showed Petitioner grasping D.W.'s hair to hold him down, insisting that this was also superimposed.  Id. at 62, 66-69, 72-74.

The video was published to the jury.  Id. at 77-78.

### 2. Petitioner's Case

Petitioner did not present any evidence on his behalf.

### 3. The Verdict

On March 15, 2006, the jury found Petitioner guilty of Promoting a Sexual Performance by a Child and Endangering the Welfare of a Child.  Id. at 165-66.

**D. The Second Trial**

The second trial commenced on March 27, 2006 on the remaining charges.

    **1. The People's Case**

Holly Jo Gardner ("Gardner") dated Petitioner for two years. T.T. of 03/28/06 32. In May 2003, Petitioner told Gardner that he was going to steal laptop computers from the Canaseraga Public Library. Later, Petitioner showed Gardner two laptop computers, and told her that he had unlocked a window to the library, entered the library after hours through the window, and had stolen the computers. Id. at 31-34, 47, 50. In early October 2004, New York State Police Investigator Gabrielle Giambelluca Kyser interviewed Gardner about the burglary. Based on the information Gardner provided, Investigator Kyser obtained a search warrant for Petitioner's home at 16 Main Street in Burns, New York. On October 12, 2004, Investigator Kyser and others executed the search warrant, and recovered two laptop computers. Id. at 45-48. Analysis by the Regional Computer Forensic Lab of Western New York verified that the two laptops recovered from Petitioner's home were the two stolen from the Canaseraga Public Library. These computers had been installed with software registered to D.W. and Neal Woodring, respectively. Id. at 51, 54-56.

Canaseraga librarian Kathie Sleight ("Sleight") identified the laptops, and explained that each laptop would cost $1200 dollars to

replace. Sleight also told the jury that she was with Petitioner throughout the day during his community service, and that he did not have permission to enter the library after hours. T.T. of 03/29/06 14-15, 18-19, 22-23. Ristina Wigg ("Wigg"), the executive director of the Southern Tier Library System, of which Canaseraga Public Library was a member, thought that the value of the two stolen laptops would be less than $1000 dollars. Id. at 45-46.

### 2. Petitioner's Case

Petitioner testified on his own behalf. He testified that in May 2003, while he was performing community service at the Canaseraga Public Library, he stole two laptops. However, he denied breaking in after hours to steal them. He testified that when he took the computers to the "back room" to put them in a box, he was out of Sleight's view, and lowered the two laptops out a window. Id. at 52-53, 59, 60-61. Then, we he left for the day, he walked around the building, picked up the laptops from the ground, and left. Id. at 53. Petitioner speculated that each computer was worth between $250 and $400 dollars. Id. at 56-57.

### 3. The Verdict

The jury found Petitioner guilty of Burglary in the Third Degree, Petit Larceny, and Criminal Possession of Stolen Property in the Fifth Degree. The jury found Petitioner not guilty of Grand Larceny in the Fourth Degree and Criminal Possession of Stolen Property in the Fourth Degree. Id. at 158-159.

**E. Sentencing**

On July 7, 2006, Petitioner was sentenced to the following: consecutive, indeterminate terms of two to six years imprisonment for the Promoting a Sexual Performance by a Child and Third Degree Burglary convictions; a determinate term of one year imprisonment for the Endangering the Welfare of a Child count, to be served concurrently with the sentence imposed for the Promoting a Sexual Performance by a Child conviction; and determinate terms of one year imprisonment on each of the Criminal Possession of Stolen Property and Petit Larceny counts, to be served concurrently with the sentence imposed for the Third Degree Burglary conviction. Sentencing Mins. [S.M.] 16-17.

**F. Direct Appeal**

The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction on February 8, 2008. People v. Woodring, 48 A.D.3d 1273 (4th Dep't 2008); lv. denied, 10 N.Y.3d 846 (2008). See Resp't Exs. F-I.

**G. Motion to Vacate the Judgment of Conviction**

On March 3, 2008, Petitioner filed a *pro se* motion to vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. L. ("CPL") § 440.10, on the grounds that he received ineffective assistance of trial counsel. See Resp't Ex. J. That motion was denied on procedural grounds pursuant to CPL § 440.10(2)(a) because the issue had already been considered and rejected on the merits on direct

appeal.  See Resp't Ex. L.  Leave to appeal was denied.  See Resp't Exs. M-N.

**H.    The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds:  (1) ineffective assistance of trial counsel; and (2) that his conviction at the second trial was based on an illegal search and seizure.  See Pet. at ¶22A-B (Dkt. #1);  Reply (Dkt. # 17).

**III. General Principles Applicable to Habeas Review**

**A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S.

362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris v. Reed, 489 U.S. 255, 262 (1989) (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

**IV. Merits of the Petition**

**1. Ineffective Assistance of Trial Counsel Claim**

Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel as a result of the county court's failure to permit retained trial counsel to withdraw from representing him.[2] See Pet. ¶22B, Attach Mem. at 17-

---

[2] Before trial, Petitioner's retained trial counsel moved for withdrawal as counsel for Petitioner based on lack of payment and "communication difficulties." Hr'g Mins. of 11/09/05 at 3. The Allegany County Court (Hon. James E. Euken) denied Petitioner's motion to withdraw as counsel, and Petitioner continued to be represented by his unpaid retained trial counsel. Id. at 5.

19.  The county court rejected this claim on procedural grounds, pursuant to CPL § 440.10(2)(a), because the issue had previously been decided on the merits on direct appeal. See Resp't Ex. N at 2. Consequently, this claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the county court denied Petitioner's ineffective assistance of counsel claim pursuant to CPL § 440.10(2)(a) because the issue was previously decided on the merits on direct appeal. See Resp't Ex. N at 2. Denial of a claim pursuant CPL § 440.10(2)(a) has been found to constitute an adequate and independent state ground. See, e.g., McClarin v. Smith, 2007 U.S. Dist. LEXIS 58717, 05-CV-2478 (DLI), at *50 (E.D.N.Y. 2007) (finding due process claim procedurally barred by New York Criminal Procedure Law § 440.10(2)(a) because it had been adjudicated on the merits during petitioner's direct appeal); D'Alessandro v. Fischer, 2005 U.S. Dist. LEXIS 40728, No. 01 Civ. 2551 (LTS)(DF), at *55 (S.D.N.Y. Jan 31, 2005) ("the trial court's express reliance on CPL § 440.10(2)(a) indicates that the court rejected Petitioner's ineffective assistance claim on an independent and adequate state procedural ground, precluding federal habeas review") (Report and

Recommendation), *adopted,* 2005 U.S. Dist. LEXIS 31381, No. 01 Civ. 2551 (LTS)(DF) (S.D.N.Y. Nov. 28, 2005). Accordingly, the state court's reliance on CPL § 440.10(2)(a) to deny Petitioner's claim constitutes an independent and adequate state bar, precluding this Court's review of it.

A finding of procedural default bars habeas review of the federal claims unless the petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a "miscarriage of justice." See Murray v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice (i.e., that he is actually innocent). Accordingly, Petitioner's ineffective assistance of trial counsel claim is dismissed as procedurally defaulted.

In any event, Petitioner's claim is meritless. To prevail on an ineffective assistance of counsel claim, Petitioner must show that counsel's representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668 (1984). Petitioner cannot make such a showing given that his claim is factually and sequentially belied by the record.

Petitioner claims that counsel's thwarted attempt to withdraw from representation resulted in alleged deficiencies with respect to the grand jury proceedings and the indictment. However, the record reflects that Petitioner was indicted on July 6, 2005, some four months before counsel moved to be discharged. To this extent, the county court's refusal to discharge counsel could not have influenced counsel's representation of Petitioner before the grand jury. Similarly, Petitioner's contention that the county court's refusal to discharge counsel resulted in ineffective assistance of counsel with respect to the indictment also fails insomuch as counsel did, albeit unsuccessfully, move to dismiss the indictment on grounds of legal insufficiency. See Resp't Ex. P. Accordingly, even if this claim was not procedurally defaulted, it would still fail on the merits.

**2. Fourth Amendment Claim**

Petitioner argues, as he did on direct appeal, that his conviction (at the second trial) was obtained by use of evidence gained pursuant to an unconstitutional search and seizure because the search warrant for his home was based on stale information, vague assertions, and on hearsay.[3] See Pet. ¶22A; Attach. Mem. at

---

[3] To the extent Petitioner specifically contends, as he did on direct appeal, that the search warrant was issued without probable cause because the application relied upon hearsay evidence from an unreliable identified informant, that contention is procedurally barred from review by this Court. The Fourth Department rejected this specific issue on procedural grounds, pursuant to CPL § 470.05(2) because the issue had not been properly preserved for appellate review. Woodring, 48 A.D.3d at 1275. The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir.

17. The Fourth Department rejected this claim on the merits. Woodring, 48 A.D.3d at 1275. As discussed below, Petitioner's Fourth Amendment claim is barred from habeas review by Stone v. Powell, 428 U.S. 465 (1976).

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494 (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) *(en banc)*, cert. denied, 434 U.S. 1038

---

1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of his claim. As discussed at Section "IV, 1" above, this Court may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. Liberally construing Petitioner's Reply, he alleges ineffective assistance of counsel as cause for the default. See Reply at 2. However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when it has not been raised as an independent claim in the state courts. See Murray, 477 U.S. at 488-90; see e.g., Ross v. Burge, 2008 U.S. Dist. LEXIS 20141, 03 Civ. 3867, at *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim). Although Petitioner raised ineffective assistance of counsel as a stand-alone claim in the state courts, he did not raise such claim on the basis of counsel's failure to preserve this particular issue. Thus, Petitioner cannot make a successful showing of "cause and prejudice" to overcome the procedural default. Moreover, he has not demonstrated that this Court's failure to review his claim will result in a miscarriage of justice. Accordingly, this specific portion of Petitioner's Fourth Amendment claim is dismissed as procedurally defaulted.

(1978). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See CPL § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in C.P.L. § 710.10 et seq. as being facially adequate).

Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate the issue in state court. The record reflects that Petitioner moved for suppression of the laptop computers on the ground that the search warrant was unsupported by probable cause because the evidence provided to the police by Forester was "stale" and based on "hearsay," and did not

establish that the laptop computers would likely be found at Petitioner's home. See Resp't Ex. B. Because the issue before the county court was limited to the legal question of probable cause, and involved no factual dispute, the parties stipulated that the trial court would base its decision on review of the search warrant, the application for the warrant, and the documents submitted to the court in support of the warrant. See Resp't Ex. B; T.T. of 11/09/05 7-15. Following this review, the county court (Justice Euken) denied Petitioner's motion to suppress. See Resp't Ex. B. The Fourth Department subsequently affirmed the hearing court's ruling on the merits, and leave to appeal from the decision of the Fourth Department was denied by the Court of Appeals. See Resp't Exs. G, I.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His dissatisfaction with the determination of the hearing court, which was subsequently affirmed by the Fourth Department, does not constitute the sort of "breakdown" referred to in Gates. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some

sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. And, even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71.

Thus, this Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim. The claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   February 24, 2011
         Rochester, New York